The defendant was arrested without a warrant for alleged violations of the law on May 31, 1979. On the same day he was arraigned in the Superior Court in the thirteenth geographical area on five counts: (1) attempted assault in the first degree in violation of General Statutes 53a-59; (2) attempted assault on a police officer in violation of 53a-167c; (3) assault in the third degree in violation of 53a-61; (4) interfering with a police officer in violation of 53a-167a; and (5) reckless endangerment in violation of 53a-63. The first two counts are felonies and the remaining three counts are misdemeanors. Probable cause was found for the warrantless arrest at the original presentment. On June 12, 1979, the criminal action was transferred to the judicial district of Hartford-New Britain at Hartford for prosecution because of the felony charges against the defendant. *Page 349 
The defendant appeared in the judicial district on June 19, 1979, and elected to be tried by a jury of six after pleading not guilty to a single count information charging him with the felony offense of attempted assault in the first degree. Nineteen months later two amendments to the information were filed by the assistant state's attorney. The first, on January 16, 1981, added count two, assault on a peace officer, a felony, and count three, reckless endangerment in the first degree, a misdemeanor. On the eve of trial, January 20, 1981, the state filed a fourth count, charging the defendant with interfering with an officer, another misdemeanor. The defendant pleaded not guilty to those additional offenses. His jury trial began on January 21, 1981. The defendant appeared pro se. He was acquitted of the two felony counts, attempted assault in the first degree and assault on a peace officer, but convicted of the two misdemeanor charges, reckless endangerment in the first degree and interfering with an officer. From those convictions, he has appealed assigning five claims of error.
The defendant's first and principal claim of error alleges that the state's delay beyond the statute of limitations of one year in charging him with the two respective misdemeanors in counts three and four, of which he was convicted, was fatal to its case. He contends that "[t]he Prosecutor unjustly and unlawfully resurrected charges that had been dropped over one and a half years ago, after court proceedings had already begun, and prosecuted me in direct violation of Connecticut General Statutes Sec. 54-193." In support of this assignment of error, the defendant relies upon the statute of limitations for misdemeanors. General Statutes (Rev. to 1979)54-193, now 54-193 (b), limits prosecution for misdemeanors to one year after commission of the offense. We do not agree with this claim of the defendant. *Page 350 
An arrest in a criminal case is the apprehension or detention of a person to answer to an alleged or suspected crime. Walters v. Platt, 22 Conn. Sup. 1,3, 158 A.2d 255 (1956). "A criminal is arrested to secure his custody and to keep him to respond to sentence if convicted. . . . Presumably the prosecuting authority has a case against him, although in law he is presumed innocent. . . ." Ryan v. Ebecke, 102 Conn. 12, 18,128 A. 14 (1925). An arrest may be made in two ways. First, it may be made pursuant to an arrest warrant. No such arrest or bench warrant may be issued unless the request for it by the prosecuting attorney includes facts, supported by oath or affirmation, from which the court or judge issuing the warrant can make an independent determination of probable cause that the accused committed a crime. State v. Townsend, 167 Conn. 539,552-53, 356 A.2d 125, cert. denied, 423 U.S. 846,96 S.Ct. 84, 46 L.Ed.2d 67 (1975). Second, it may be made without an arrest warrant "when the person is taken or apprehended in the act or on the speedy information of others." General Statutes 54-1f (a), formerly General Statutes (Rev. to 1979) 54-1f. The defendant in this case was arrested without a warrant. No transcript of the evidence has been filed in this court. The record, therefore, does not show whether the defendant was arrested on sight upon the commission of the alleged crimes or on the speedy information of others.
An arrest without a warrant constitutes the commencement of criminal prosecution against the arrestee or suspect. The statutory limitation of one year after the commission of an offense for the prosecution of a misdemeanor is clocked by an arrest without a warrant. Consequently, the arrest of the defendant on May 31, 1979, was a timely prosecution of the defendant for the misdemeanor offenses alleged to have been committed by him on that day. *Page 351 
The issue raised by the defendant concerns the two misdemeanor charges refiled before the start of his January 21, 1981, trial by the assistant state's attorney on January 16 and 20, 1981, respectively. That was more than nineteen months after the transfer of the defendant's prosecution from the geographical area to the judicial district because the two felony charges against him fell outside the jurisdiction of part B of the criminal division. Part B of the criminal division had been assigned by the chief court administrator to geographical area thirteen, where the defendant was first presented. The initial felony charges brought against the defendant in geographical area thirteen were attempted assault in the first degree, a class B felony, and attempted assault on a police officer, a class C felony, both of which were under the jurisdiction of part A of the criminal division, assigned to the judicial district of Hartford-New Britain.
Since July 1, 1978, Connecticut has had a single tier court system. The Superior Court is, as provided by statute, the sole court of original jurisdiction for all causes of action, except for probate matters. General Statutes 51-164s. It is divided into judicial districts; General Statutes51-344; and geographical areas. General Statutes51-348. Pursuant to General Statutes 51-164t, "[t]he Superior court shall consist of such divisions and parts thereof as shall be provided by the rules of the superior court. . . ." Under the provisions of Practice Book 2, the Superior Court in 1979 was "divided into three divisions: family, civil and criminal." At the time of the defendant's prosecution, the criminal division consisted "of the following parts: (a) Major crimes: Capital felonies, class A, B and C felonies, and unclassified felonies punishable by sentences of ten years or more. (b) All other crimes, motor vehicle violations, and infractions." Practice Book 5.[1] *Page 352 
By virtue of General Statutes 54-1d, "[d]efendants in criminal actions shall be brought to the court in the geographical area established pursuant to section 51-348, in which the crime was alleged to have been committed, for arraignment. "In accordance with this statutory requirement, the defendant was presented for arraignment in geographical area thirteen of the Superior Court at Windsor on the day of his arrest, May 31, 1979. The crimes for which he was arrested allegedly occurred in East Windsor within that geographical area. He was advised of his rights by the judge under the provisions of General Statutes 54-1b. Bond was set by the court at $10,000 with surety. Since the defendant was arrested without a warrant, the judge made the required finding of probable cause to believe that the defendant had committed a crime before detaining him upon his failure to post the required bail. Gerstein v. Pugh, 420 U.S. 103,113-14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).
While the divisions and parts of the Superior Court are established by rules of the court, "[t]he chief court administrator shall assign to each such division or part thereof such number of judges as he deems advisable and shall designate the holding of sessions of such divisions and parts at such times and localities as he deems to be in the best interest of court business, taking into consideration the convenience of litigants and their counsel, and the efficient use of courthouse personnel and facilities." General Statutes (Rev. to 1979) *Page 353 51-164t. Accordingly, for the year July 1, 1978 — June 30, 1979, "Criminal Division Part B" prosecutions were assigned to geographical area thirteen. Allotment of Judges, July 1, 1978, p. 31. Under this designation by the chief court administrator no crime greater than a class D felony could be prosecuted in geographical area thirteen. The original two felony counts against the defendant were class B and class C felonies, respectively. Pursuant to the same statutory authority given to the chief court administrator, it was ordered that "[a]ll defendants charged with crimes within the purview of Part A of the Criminal Division shall, by order of the court, be transferred as soon as possible after arraignment to Part A of the Criminal Division."[2] Allotment of Judges, July 1, 1978, p. 22. In compliance with this directive, the defendant was transferred to the judicial district of Hartford-New Britain, at Hartford, and on June 12, 1979, was released on bail after posting a 10 percent cash bond.
At the defendant's arraignment in the judicial district on June 19, 1979, the assistant state's attorney filed a long form information charging him with attempted assault in the first degree in violation of General Statutes 53a-59 (a)(1) and53a-49, a class B felony. The defendant, appearing pro se, pleaded not guilty and elected a jury trial. The case thereafter remained on the trial list until January 16, 1981, when the prosecution filed an amendment to the information adding two counts, assault on a police officer in violation of General Statutes 53a-167c (a)(1), a class C felony, and reckless *Page 354 
endangerment in the first degree in violation of General Statutes 53a-63 (a), a class A misdemeanor. On January 20, 1981, a fourth count, accusing the defendant of interfering with an officer in violation of General Statutes 53a-167a
(a), a class A misdemeanor, was added by further amendment to the information. The defendant pleaded not guilty to the additional three counts. These amendments to the information were permitted by Practice Book 623. Since no transcript of the amendment proceedings was filed, we are unable to ascertain whether the defendant objected to the new charges or moved to strike them from the information.
This detailed review of the criminal proceedings from the arrest of the defendant to the time of trial establishes that prosecution commenced upon his arrest without a warrant. The prosecution of the defendant began with his arrest the same day on which the offenses were alleged to have occurred. That commencement of his prosecution being within the one year statute of limitations for misdemeanors was not only timely, but occurred on the same day as the commission of the alleged offenses. The intracourt transfer of the defendant from the geographical area to the judicial district was not a bindover of the prosecution to a court of proper jurisdiction from one lacking jurisdiction of the particular criminal offense or offenses. The Superior Court is a constitutional court of unlimited jurisdiction. Conn. Const., art. 5 1; General Statutes 51-164s. Its organization into divisions and parts under General Statutes 51-164t and Practice Book 1 through 7 is not a jurisdictional classification or limitation. Such a transfer from one part of the Superior Court to another to reach the authority of a judge assigned by the chief court administrator which is necessary for disposition of a particular class of felony is unlike the bindover procedure from the former lower statutory courts of limited jurisdiction to the former *Page 355 
Superior Court as a constitutional court of unlimited jurisdiction. See State v. Sober,166 Conn. 81, 86-87, 347 A.2d 61 (1974).
Once prosecution of a criminal case has commenced within the time period allowed by the appropriate statute of limitations, the prosecutor has "broad discretion in determining what crime or crimes to charge in any particular situation." State v. Chetcuti, 173 Conn. 165, 168,377 A.2d 263 (1977). "If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced." Practice Book 623. The expiration of any applicable statute of limitations does not infringe upon the right of substantive amendment before trial.[3] Here the prosecutor refiled by amendment two misdemeanor counts that were included in the five counts of the original information filed on the date of the defendant's arrest and arraignment in the geographical area court. In this respect the two misdemeanors, while substantive in nature, were not new or unfamiliar charges to the defendant of which he could claim surprise.
The filing of these two misdemeanor counts by amendment before trial to the information pending against him more than one year after the commencement of his prosecution by arrest without warrant on May 31, 1979, did not violate the one year statute of limitations for prosecution of misdemeanors prescribed by 54-193, now 54-193 (b). *Page 356 
Our Supreme Court has on two occasions reached a similar conclusion. In State v. Gardner, 112 Conn. 121,125, 151 A. 349 (1930), the court in a prosecution for criminal libel ruled as follows: "The accused appeals from the refusal of the trial court to direct a verdict in his favor on the ground that the prosecution was not instituted within one year next after the offense was committed. The information filed by the state's attorney in the Superior Court more than a year subsequent to the publication was not the commencement of a new proceeding but merely a substitution for the original complaint filed five days after the publication. State v. Ward,49 Conn. 429, 437 (1881). The prosecution was commenced within the time prescribed in the statute of limitations."
State v. Ward, supra, was procedurally similar to the present case and its holding is relevant to the issue here. Ward was charged with the theft of a horse on September 7, 1878, in a grand juror's complaint to a justice of the peace. On October 8, 1878, he was bound over to the Superior Court, where an information charging the same offense was filed by the state's attorney at the January, 1879, term of the court. The statute of limitations for the crime was three years and expired on September 7, 1881. He was thereafter put to plea for the first time on October 13, 1881, and, after a subsequent trial, convicted. On the defendant's claim on appeal that the information filed by the state's attorney after the bindover was a new accusation in a new prosecution and that the statute of limitations had run against the crime before he was prosecuted and put to plea, the court (pp. 437-38) held: "But it is an erroneous assumption that the information filed by the Attorney was the commencement of a new proceeding and an abandonment of the old one; it was merely a substitution of the information for the complaint in the progress of the prosecution commenced by the grandjuror. *Page 357 
There was no abandonment of the original proceedings. The bond taken by the justice required the accused to appear before the Superior Court and answer to the charge contained in the complaint. The information made the same charge in the same court in the same case. Hence the bond required the accused to make answer to the information, and it would have been forfeited if he had failed to do so as much as it would have been if the case had proceeded upon the complaint. Such has been the uniform rule in such cases from time immemorial, and its correctness has never before been questioned."
The defendant raises two evidentiary issues. He claims error in the judge's refusal to allow "pertinent evidence that provoked the defensive incident"[4] and evidence concerning the illegality of the citation issued against him for civil contempt. Those issues are not before this court. They have not been properly briefed. The defendant merely makes a few factual statements without reference to the evidentiary proceedings in his brief, and fails to set forth the offer of relevant evidence and proof, any objections and supporting grounds, the court's rulings thereon, exceptions noted to the court's rulings and a brief supporting narrative or verbatim statement relating to the evidentiary claims or proceedings. For these reasons, the claimed errors in disallowing evidence are not reviewable. Practice Book 3060F (c)(3); State v. Tinsley, 181 Conn. 388,400-401, 435 A.2d 1002 (1980), cert. denied,449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981). Furthermore, the defendant has failed to state or show that the claimed evidentiary errors were harmful to him. Because the defendant's claims do not involve the violation of a constitutional right, the burden rests upon him to demonstrate *Page 358 
the harmfulness of the court's alleged error. State v. Cooper, 182 Conn. 207, 212,438 A.2d 418 (1980).
The defendant's fourth claim of error is that the court refused his "choice of counsel." At trial the defendant represented himself. That he had a right to do. In his brief, he asserts that he "had gone through at least a dozen attorneys; none would consider taking on my defense on Constitutional grounds." For that reason, he sought to have two laymen "represent" him. That request of lay representation by others the court properly denied. Our holding in State v. Wheeler,37 Conn. Sup. 693, 697, 435 A.2d 372 (1981), is dispositive of this claim: "We are not aware of, and we are not inclined to create, any authority suggesting that the right of a defendant `to have the assistance of counsel for his defense' in thesixth amendment of the federal constitution or the `right to be heard . . . by counsel' in article first, 8, of our state constitution permits the employment as counsel of persons lacking the required education, training and other qualifications established for the practice of law. See Practice Book 16."
The defendant was tried by a jury of six members. He now claims error in the court's refusal of his claim for a jury of twelve. Other than this statement of issue on appeal, the defendant cites no reason or authority for this claim of error. There is no constitutional or statutory right for trial by a jury of twelve in a prosecution of the felony and misdemeanor charges made against the defendant at trial. Under the provisions of General Statutes 54-82
(c), "[i]f the party accused does not elect to be tried by the court, he shall be tried by a jury of six except that no person, charged with an offense which is punishable by death or life imprisonment, shall be tried by a jury of less than twelve without his consent." Such a bifurcation of jury trials meets the constitutional guarantee of the right to a jury trial *Page 359 
embodied in the sixth amendment to the United States constitution. Williams v. Florida, 399 U.S. 78,86, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).
In his brief, the defendant for the first time claims error in the court's refusal of his request to charge the jury to consider the supremacy clause of the constitution of the United States, article six, and the search and seizure provision contained in the fourth amendment to the United States constitution. The defendant "failed to include this claim in his preliminary statement of issues, as required by our rules of practice. See Practice Book, 1978, 3012(a). Under the circumstances, this claim is not properly before us and will not be considered. Practice Book, 1978, 3063." Presutti v. Presutti, 181 Conn. 622, 626, 436 A.2d 299 (1980).
 There is no error.
In this opinion CORRIGAN and O'DONNELL, Js., concurred.